**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MARGUIS CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL** |
| THE JUICY CRAB, INC.; and WJKC, | ) | **DEMANDED** |
| GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff MARGUIS CARTER ("Plaintiff"), by and through his attorneys, brings this action for damages and other legal and equitable relief from Defendants THE JUICY CRAB, INC. ("Juicy Crab") and WJKC GROUP, INC. ("WJKC") (collectively, "Defendants"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.* ("§ 1981"), for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.     This is an action brought by Plaintiff against Defendants for retaliation, discrimination, and harassment.

2.     Defendants are a chain of Cajun-style seafood restaurants with locations in ten (10) states. Defendants are primarily based in Georgia and have recently begun franchising.

3.     Defendants employed Plaintiff, a disabled Black male, as a Kitchen Manager and treated him less favorably than his fellow Asian and non-disabled co-workers on the basis of his race and/or disability.

4.     Defendants also terminated Plaintiff for complaining about the unlawful discrimination and harassment he was subjected to and/or for complaining about Defendants' General Manager sexually harassing female employees.

5.     In remediation for the irreparable harm that Plaintiff has suffered, Plaintiff is seeking to recover: (i) back pay; (ii) front pay; (iii) emotional damages; (iv) punitive damages; (v) attorneys' fees and costs; (vi) interest; (vii) injunctive relief;  and (viii) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover

damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) 42 U.S.C. §§ 2000e *et seq.*, as amended; (iv) 42 U.S.C. §§ 1981 *et seq.*, as amended; and (v) 42 U.S.C. §§ 12101 *et seq.*, as amended.

7.      Venue is proper in this Court pursuant to 42 U.S.C. §§ 2000e *et seq.*, as amended, 42 U.S.C. §§ 1981 *et seq.*, as amended, and 42 U.S.C. §§ 12101 *et seq.*, as amended, in as much as this judicial district lies in a State and judicial district in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## **PARTIES**

8.      Plaintiff is a Black disabled citizen of Florida.

9.      Plaintiff resided within the state of Georgia at all relevant times.

10.     At all relevant times, Plaintiff was an "employee" of Defendants pursuant to Title VII, § 1981, and the ADA.

11.     Defendant Juicy Crab is a corporation that is incorporated in the state of Georgia.

12.     Defendant Juicy Crab transacted and continues to transact business within Georgia, by formerly and currently employing Plaintiff within Georgia and by owning and operating facilities within Georgia.

13.     Upon information and belief, at relevant timesDefendant Juicy Crab had more than Fifteen (15) employees.

14.     Defendant Juicy Crab has at all relevant times been an "employer" covered by Title VII, § 1981, and the ADA.

15.     Defendant WJKC is a corporation that is incorporated in the state of Georgia.

16.     Defendant WJKC transacted and continues to transact business within Georgia, by formerly and currently employing Plaintiff within Georgia and by owning and operating facilities within Georgia.

17.     Upon information and belief, at all relevant times, Defendant WJKC had more than Fifteen (15) employees.

18.     Defendant WJKC has at all relevant times been an "employer" covered by Title VII, § 1981, and the ADA.

19.     Defendant WJKC does business as The Juicy Crab.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

20.   On December 4, 2019, Plaintiff filed a charge of discrimination and retaliation pursuant to Title VII and the ADA with the Equal Employment Opportunity Commission ("EEOC").

21.   Plaintiff's EEOC Charge was addressed to 1360 Dogwood Drive SE, Conyers Georgia 30013, which is Defendant WJKC's location, and to 3555 Koger Boulevard, Suite 390, Duluth Georgia 30096, which is a corporate location of Defendant Juicy Crab.

22.   On February 23, 2022, Plaintiff received his Notice of Right to Sue Letter from the EEOC for his December 4, 2019 Charge.

## STATEMENT OF THE FACTS

### I.   Facts Pertaining to Defendants Discriminating and Retaliating Against Plaintiff

23.   Plaintiff is a Black male who had a tibia plateau fracture. As a result of this devastating injury, Plaintiff's ability to lift heavy objects, walk, bend, and sit is substantially and permanently limited. For example, he walks with a significant limp and cannot sit for long periods. Thus, Plaintiff suffers from a disability under the ADA.

24.   On April 8, 2019, Defendant Juicy Crab hired Plaintiff as Kitchen Manager. Defendant Juicy Crab assigned him to train at its 1873 Jonesboro, Road,

McDonough, Georgia 30253 location (the "McDonough location"), which is under Future International, LLC's ownership.

25.     During his training at the McDonough location, Plaintiff was trained as a Kitchen Manager, Front of House Manager, Back of House Manager, and a General Manager.

26.     Shortly after commencing his employment/training, Plaintiff uncovered that he was being paid less than non-Black and Asian Managers.

27.     Plaintiff also uncovered that Asian employees were not charged for ordering food from the McDonough location. Asian employees also were permitted to order any food item and to eat in the kitchen.

28.     Plaintiff and other non-Asian employees, however, were only given a 20% discount when ordering food and were not permitted to order crabs, lobster, crawfish. They also were not permitted to eat in the kitchen.

29.     On or around April 22, 2019, Plaintiff complained of Defendant Juicy Crab's foregoing discriminatory pay and meal break practices to Thomas Mallindine ("Mr. Mallindine"), Defendant Juicy Crab's White Vice President of Operations.

30.     No remedial action was taken in response to Plaintiff's complaint.

31.     Accordingly, Plaintiff lodged another complaint to Hendra Bhaktier ("Mr. Bhaktier"), Defendant Juicy Crab's Asian Corporate Vice President. In

response, Mr. Bhaktier demanded that Plaintiff "keep [his] mouth shut" and he did not take any remedial action.

32.     Plaintiff lodged another three (3) complaints to Mr. Bhaktier, but nothing was done.

33.     Thus, the foregoing discriminatory treatment continued during Plaintiff's tenure at the McDonough location.

34.     On or around May 27, 2019, Mr. Bhaktier transferred Plaintiff to Defendant Juicy Crab's 4349 Lawrenceville Highway, Tucker, Georgia 30084 location (the "Tucker location").

35.     On or around May 28, 2019, after working one day at the Tucker location, Plaintiff was again transferred by Mr. Bhaktier to Defendant Juicy Crab's 1360 Dogwood Drive SE, Conyers, Georgia 30013 location (the "Conyers location"), which is under Defendant WKJC's ownership.

36.     Defendant WJKC issued Plaintiff his paychecks while he worked at the Conyers location.

37.     On or around May 29, 2019, Plaintiff began working at the Conyers location, and his Asian General Manager, Daniel Yeung ("Mr. Yeung"), immediately stated to him that he heard he has "had issues."

38.     While at the Conyers location, Plaintiff again complained about the disparate pay and meal policies to Defendant Juicy Crab.

39.     In response, on June 24, 2019, Plaintiff was given a $5,000 raise, but no action was taken regarding the disparate meal policies.

40.     In July 2019, Mr. Mallindine resigned and Mr. Yeung was promoted to Defendant Juicy Crab's vacant Vice President of Operations position.

41.     Also in July 2019, Jamal Jackson ("Mr. Jackson"), was hired as General Manager of the Conyers' location.

42.     On or around July 23, 2019, Plaintiff requested a reasonable accommodation for his disability of no sitting, bending, or heavy lifting. Plaintiff also provided a physician's note to Mr. Jackson supporting his reasonable accommodation requests.

43.     Plaintiff also provided this physician's note to Mr. Yeung.

44.     Plaintiff was able to perform his job duties with these reasonable accommodations.

45.      In response to Plaintiff's reasonable accommodation requests, Mr. Jackson replied, "What good are you?"

46.     Mr. Jackson and Mr. Yeung did not discuss any alternative accommodations with Plaintiff or discuss his accommodation request with him.

Instead, Mr. Jackson still required Plaintiff to lift very heavy boxes of alcohol and sit down while he completed the waiter floor chart (the assignment of restaurant tables to servers).

47.    Accordingly, Plaintiff was denied a reasonable accommodation in violation of the ADA.

48.    In addition to being denied a reasonable accommodation, Mr. Jackson called Plaintiff "hip-hop," derogatorily referring to Plaintiff's noticeable limp, on almost a daily basis.

49.    Troy Legget ("Mr. Legget"), Defendant Juicy Crab's Development Manager, also told Plaintiff via text message that he had a "retarded walk."

50.    Plaintiff complained orally to Mr. Yeung and Defendant Juicy Crab's Human Resources department of Mr. Jackson calling him "hip-hop" and requiring him to sit while completing a floor chart, but neither Defendants took any remedial action. As a result, the harassment of Plaintiff continued after his complaints causing him severe emotional distress and negatively impacting his ability to perform his job duties.

51.    On August 21, 2019, Plaintiff complained to Mr. Yeung of Mr. Legget calling the manner in which he walked "retarded." Upon information and belief, no remedial action, however, was taken against Mr. Legget for his derogatory comment.

9

52.     Thereafter, on August 30, 2019, Plaintiff again complained to Mr. Yeung of being harassed on a daily basis and to complain of Defendants' inaction in response to them.

53.     On or around September 5, 2019, Plaintiff had a meeting with Mr. Bhaktier, Vivan Chen, upon information and belief, the daughter of Raymond Chen (the owner of Juicy Crab), and a Human Resources employee of Defendant Juicy Crab.

54.     At this meeting, Plaintiff complained of not being paid the same wages as Asian Managers, being subjected to a disparate meal policy, not being accommodated, and being harassed on the basis of his disability. Like Plaintiff's other complaints, no remedial action was taken in response to his September 5, 2019 complaint.

55.     On or around September 9, 2019, in retaliation for his complaints, Defendants stripped Plaintiff of some of his important managerial duties, including the ability to discipline employees and schedule employees to work.

56.     On or around September 28, 2019, five (5) female employees told Plaintiff that Mr. Jackson was sexually harassing them.

57.     On September 29, 2019, Plaintiff complained to Mr. Yeung on behalf of the five (5) female employees that Mr. Jackson was sexually harassing them.

58.     Again, Defendants did not take any remedial action in response to Plaintiff's complaints.

59.     On October 1, 2019, Plaintiff complained to Defendant Juicy Crab's Human Resources Department via email about Mr. Jackson sexually harassing female employees at the Conyers location.

60.     Two (2) weeks later, on October 15, 2019, Mr. Yeung terminated Plaintiff in retaliation for his complaints of unlawful harassment/discrimination on behalf of himself and/or on behalf of others.

61.     Accordingly, both Defendants violated Title VII and the ADA by terminating Plaintiff in retaliation for engaging in protected activity.

## II.     Facts Pertaining to Defendants Being Plaintiff's Joint Employer and/or A Single Integrated Enterprise.

62.     Defendants jointly employed Plaintiff and/or were a single integrated enterprise throughout the relevant time period.

63.     Defendant Juicy Crab had the power to hire Plaintiff, transfer Plaintiff, discipline Plaintiff, set his schedule, terminate Plaintiff, and formulate/implement his employment policies.

64.     Mr. Mallindine, a Defendant Juicy Crab employee, contacted Plaintiff to recruit him to work for Defendant Juicy Crab.

65.     Mr. Mallindine interviewed Plaintiff. Mr. Bhaktier a Defendant Juicy Crab employee, interviewed Plaintiff after Mr. Mallindine.

66.     Mr. Mallindine hired Plaintiff.

67.     Mr. Bhaktier set Plaintiff's rate of pay.

68.     Defendant Juicy Crab required Plaintiff to sign an employment agreement with it.

69.     Defendant Juicy Crab transferred Plaintiff from the Tucker location to the Conyers location.

70.     Defendants jointly maintained Plaintiff's employment records.

71.     Defendant WJKC paid Plaintiff.

72.     Defendant Juicy Crab resolved payroll issues for Defendant WJKC employees, including Plaintiff.

73.     Mr. Yueng, a Defendant Juicy Crab employee, terminated Plaintiff.

74.     Mr. Yeung certified that "The Juicy Crab" was Plaintiff's employer on the state of Georgia's Department of Labor separation notice. He also listed Plaintiff's employer's address at 3555 Kroger Blvd, Suite 390, Duluth Georgia, 30096, a corporate address of Defendant Juicy Crab.

75.     Mr. Yeung increased Plaintiff's rate of pay from $45,000 to $50,000 on June 24, 2019.

76.     Mr. Yeung disciplined Plaintiff, including on or around January 13, 2020.

77.     Defendant Juicy Crab provided human resources for Plaintiff and other employees of Defendant WJKC.

78.     Defendant Juicy Crab also provided email addresses for Defendant WJKC's management.

79.     Defendant WJKC's management reported workplace violations and poor performance to Defendant Juicy Crab, including Plaintiff.

80.     Defendant WJKC required Plaintiff to obtain Mr. Yeung's approval before writing up its employees.

81.     Defendant Juicy Crab advertises for jobs on its website on behalf of Defendant WJKC.

82.     Defendant WJKFC's Managers report to Defendant Juicy Crabs personnel, including Mr. Yeung.

83.     Defendant WJKC sent a portion of their revenue to Defendant Juicy Crab.

84.     Upon information and belief, Defendant Juicy Crab owns a percentage of Defendant WJKC.

85.     Defendants jointly responded to Plaintiff's EEOC Charge by filing a Position Statement. Mr. Yeung provided statements on behalf of Defendants in support of their Position Statement.

86.     Defendant WJKC denied Plaintiff's allegations in his EEOC Charge.

87.     Defendant WJKC submitted documentation in support of its opposition to Plaintiff's EEOC Charge.

88.     Defendant WJKC represented to the EEOC that it was an employer of Plaintiff.

**CAUSES OF ACTION**

**COUNT 1**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. §§ 2000e *et seq.***
**(Retaliation)**

89.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

90.     Plaintiff lodged complaints with Defendants regarding racial discrimination to which he was subjected to, and, as such, engaged in protected activity under Title VII.

91.     Plaintiff lodged complaints with Defendants regarding the sexually hostile work environment to which his female co-workers were subjected, and, as such, engaged in protected activity under Title VII.

14

92.     Defendants retaliated against Plaintiff for his complaints by terminating him.

93.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

94.     Plaintiff's requests for relief are set forth below.

**COUNT 2**
**Violation of Section 1981 of the Civil Rights Act of 1866**
**42 U.S.C. §§ 1981 *et seq.***
**(Retaliation)**

95.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

96.     Plaintiff lodged complaints with Defendants regarding racial discrimination to which he was subjected to, and, as such, engaged in protected activity under § 1981.

97.     Defendants retaliated against Plaintiff for his complaints by terminating him.

98.     The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 *et seq.*

99.     Plaintiff's requests for relief are set forth below.

**COUNT 3**
**Violation of the Americans with Disabilities Act of 1990**
**42 U.S.C. §§ 12101 *et seq.***
**(Retaliation)**

100.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

101.   Plaintiff lodged complaints with Defendants regarding harassment on the basis of his disability to which he was subjected to, and, as such, engaged in protected activity under the ADA.

102.   Defendants retaliated against Plaintiff for his complaints by terminating him.

103.   The conduct alleged herein violates the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*

104.   Plaintiff's requests for relief are set forth below.

**COUNT 4**
**Violation of the Americans with Disabilities Act of 1990**
**42 U.S.C. §§ 12101 *et seq.***
**(Disability Discrimination)**

105.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

106.   Plaintiff has a disability within the meaning of the ADA.

107.   Plaintiff requested reasonable accommodations from Defendants for his disability.

108.   Plaintiff could perform his Kitchen Manager job duties with his requested accommodations.

109.   Defendants failed to provide Plaintiff with a reasonable accommodation.

110.   The conduct alleged herein violates the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*.

111.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

**COUNT 5**
**Violation of the Americans with Disabilities Act of 1990**
**42 U.S.C. §§ 12101 *et seq*.**
**(Hostile Work Environment)**

112.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

113.   Plaintiff has a disability within the meaning of the ADA.

114.   Plaintiff was subjected to derogatory comments regarding his disability on a nearly daily basis. Plaintiff was also forced to engage in activity that went against his needed disability accommodation.

115.   Plaintiff lodged complaints of being subjected to a hostile work environment on the basis of his disability.

116.   Defendants failed to take prompt and reasonable remedial action in response to Plaintiff's complaints of a hostile work environment on the basis of his disability.

117.   Plaintiff continued to be subject to a hostile work environment on the basis of his disability after his complaints of the same.

118.   The conduct alleged herein violates the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*

**COUNT 6**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. §§ 2000e *et seq.***
**(Racial Discrimination)**

119.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

120.   Plaintiff is Black and is a member of a protected class under Title VII.

121.   Defendants subjected Plaintiff to a disparate meal policy on the basis of his race whereby Asian employees were special given meal benefits such as discounts and meal selections that were not afforded to non-Asian employees.

122.   The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

123.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A.    That the practices of Defendants complained of herein be determined and adjudged to be in violation of the rights of Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*;

B.    All damages which Plaintiff has sustained as a result of Defendants' conduct, including back pay, punitive damages, general and special damages for lost compensation and job benefits he would have received but for Defendants' unlawful discriminatory conduct, and for emotional distress, humiliation, embarrassment, and anguish;

C.    An award to representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

D.    Awarding Plaintiff his costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

E.    Pre-judgment and post-judgment interest, as provided by law; and

F.      That the Court retain jurisdiction over Defendants until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law;

Plaintiff seeks injunctive relief, and including but not limited to:

G.      Training on the subject of employment discrimination for all of Defendants' employees;

H.      Diversity training for all managers conducted by reputable outside vendors;

I.      Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

J.      Active monitoring of the work areas to ensure compliance with discrimination policies;

K.      Monitoring by the Court or a federal agency to ensure that Defendants comply with all injunctive relief; and

L.      Cessation of all retaliatory treatment of Plaintiff, including increased workloads, write-ups, and lowered performance ratings.

M.      Plaintiff further demands that he be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Respectfully Submitted,

Dated:   April 12, 2022

*/s/ Beth A. Moeller*
Beth A. Moeller
Georgia Bar No. 100158
bmoeller@moellerbarbaree.com
MOELLER BARBAREE LLP
1175 Peachtree Street, N.E.
Suite 1850
Atlanta, Georgia 30361
Telephone: (404) 748-9122

OF COUNSEL:

Alexander M. White
*pro hac vice admission pending*
awhite@vkvlawyers.com
**Valli Kane & Vagnini LLP**
600 Old Country Road
Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180

**ATTORNEYS FOR PLAINTIFF**